In transaction between individuals, it certainly is necessary that he who is bound by his contract, or even by law, to give a bond, make an assurance (such as he by his sole *Page 229 
act can make), an acquittance, or release, must make such bond, assurance, etc., and it is not sufficient for him to show that he was ready and willing to do so; and if he does not do it in stating his excuse he must in general show that the defendant either prevented the performance or rendered it unnecessary to do the prior act by his neglect or by his discharging the defendant from his performance. These are the words of Chitty on Pleadings, 317, 318, which he extracted from the best authors, and are consonant to the rules of common sense. The plaintiff's ability to perform must also be shown; otherwise, the nonperformance could not arise from the prevention, neglect or discharge of the defendant, but from his inability to perform. What amounts to a discharge is matter of law; but the fact from which the legal inference is drawn is matter of fact. To constitute the discharge, it is not necessary that the word "discharge" should be used; any other word or act which goes to show that the plaintiff does not require the act to be done, as that it is unnecessary, or unavailing, or that the plaintiff would not accept of it if done, is the same thing, and has the same operation, and the meaning of it is, "I will not accept of it; it will profit you nothing; it will not be the basis of any act of mine, nor will you, by my act, obtain what you are seeking therefrom; it is perfectly useless and unnecessary for you to do it." The law, which requires nothing to be done in vain, dispenses with the performance of the act. It amounts, therefore, to a tender and refusal. Notwithstanding the construction given to Jones v. Barclay, Doug., 684, I consider it an authority for the plaintiff, (431) except upon the point of an independent ability, of which, hereafter. The declaration states that the plaintiff offered to assign the equity of redemption and a release, and tendered to the defendant a draft of the assignment and release for his approbation, and then and there offered to execute and deliver and would have executed and delivered the said assignment and release to the defendant, but that the defendantabsolutely discharged the plaintiff from executing the same. The defendant pleaded that the plaintiff never did execute an assignment of the said equity of redemption, etc., to which plea the plaintiff demurred. This demurrer of the plaintiff put not only the validity of the defendant's plea, but the goodness of his own declaration, to the test; and if the facts set forth in it were not sufficient to support his legal inference, to-wit, that the defendant discharged him from the execution and delivery of the assignment and release, the declaration is bad; for a declaration is a compound of facts and legal inferences. It is the province of the jury to pass upon the facts, and of the court upon the legal inferences. The *Page 230 
decision of the court upon the demurrer was, that the declaration was good, thereby affirming that there was no necessity of making and sealing the assignment and release, but that an offer was sufficient, if the defendant refused to take any assignment or release; that is, that the refusal to take any assignment or release dispensed with the necessity of making one; for why should one
be made which is to enable the court to see that it is a good one, when none would do? But the counsel says this was on a demurrer where the facts are admitted. What facts? Only those set forth. And the demurrer varies it from an issue in this only, that the court at once judges upon the correctness of the legal inference made by the declaration, the facts being admitted. On an issue, the facts are denied; but when on an examination (432) found to be true, the court must see, when passing judgment, that the legal inferences are correct; and in the case in Douglas the same question would have arisen if the defendant's plea had been found by the jury to be true; for by the judgment given to the plaintiff the Court thought it no answer to the plaintiff's declaration, for its truth was omitted by the plaintiff's demurrer. So far as regards this part of the case, the facts stated in the record amount to a discharge, if true, provided it appears that the plaintiff shows that he had the ability to perform, which, the counsel for the defendant contends, means the independent power to perform the act; and this is true where the act to be performed is one capable of being reduced under his absolute control, as in a tender of money or a horse. It is not sufficient to show that his friend was standing by, ready to lend the one or the other, if the defendant would agree to receive it; the things are in their nature capable of being placed entirely within the control of the person making the offer; and his being in that state, with regard to them, shows his inability to go farther, for the things are capable of being more within his control; but when he is to bind himself, with security, as a free agent is to be bound with him, and he has that security present and willing to become bound, a moral certainty would seem to be sufficient; and if he is prevented by the discharge of the defendant, I think it would seem to follow that the nonperformance arises from the discharge of the defendant, and not from the plaintiff's inability to perform the act. I repeat it again — a moral certainty of being able to perform is sufficient. It is said this might encourage spurious offers; that men would agree to be security merely to entrap another. The defendant may avoid all harm by being merely passive or by agreeing to receive the thing which he was bound to receive. There is no necessity of refusing or discharging the plaintiff from the tender; and whether this was *Page 231 
a delusive tender, was properly left to the jury; and, also, whether Arrington acted as the friend or agent of the (433) plaintiff, or merely as the enemy of the defendant Vick. I am also induced to believe that, however the law may be between individuals, that whenever an officer is required to make his official conduct depend on his taking or receiving a bond from a person, that it is his business to prepare one. Custom and convenience require this. He is presumed to know the laws and the forms peculiar to his office better than a mere individual. A contrary practice would lead to oppression; and, although in this case no fee is fixed, from which it may be inferred that it was not his duty, it is either, I think, a casus omissus or it is included in his extra allowance; nor need we apprehend vexatious applications any more than in cases of bail, where it cannot be controverted that he is bound to furnish the bail bond, for he has a fee for it; for it is on his taking bond, and not for furnishing the bond, that the fee is due; and the sheriff might be equally vexed by the appellant's omitting to sign the bail bond, for no fee would then be due. To avoid these inconveniences and oppressions, I think, on sound principles, it is the officer's duty to furnish all official bonds, and that the sheriff now alleges, with a very bad grace, as an excuse for not giving the bonds, that it was not his business to prepare the bond, when he at the time declared that he would not take any bond. We should be well satisfied that this after-thought of the sheriff furnished a good defense; and if it was not an after-thought, he is guilty of a foul fraud in misleading the plaintiff.
PER CURIAM: Let the rule for a new trial be discharged.
Cited: Mayo v. Mayo, 9 N.C. 331.
(434)